HEARD NOVEMBER TERM, 1875.

GILLISON *vs.* SAVANNAH AND CHARLESTON RAILROAD COMPANY.

The charter of C, a railroad corporation, authorized it to acquire lands by statutory proceedings for the valuation thereof, the lands to "vest in the said company in fee simple as soon as the valuation thereof may be paid, or tendered and refused." In 1860, C commenced proceedings to acquire title to a parcel of A's land. It was valued, and C appealed from the valuation, but did not prosecute the appeal. C took possession of the land, and, having become insolvent, in 1866 all its property was sold and purchased by S, another and a distinct railroad corporation, who thereupon took possession of the land. In 1872, A commenced his action against S to have the valuation paid or the land restored to him: *Held*, That he was entitled to the relief he demanded.

The transaction was in the nature of an executory contract for the sale of the land, and, until the valuation was paid or tendered, no title passed, and S, as purchaser only of the right to complete the contract, could not avail itself of the defense of purchase for valuable consideration without notice.

S could not hold by adverse possession, nor was it protected by the Statute of Limitations.

A had a lien on the land in the nature of a mortgage, through which he had the right to enforce payment.

BEFORE FARMER, J., AT BEAUFORT, MARCH TERM, 1872.

These were two separate actions entitled: 1. W. D. Gillison *vs.* Savannah and Charleston Railroad Company; 2. T. H. Gregorie *vs.* The same. The brief upon which the appeals were heard is as follows:

The complaint in first case states: (1.) In the month of August, 1860, the Charleston and Savannah Railroad, being desirous of obtaining the right of way through plaintiff's land, called "Spring Hill," (in the first above entitled case,) instituted proceedings according to law, and commissioners were appointed to assess the

value thereof. (2.) The commissioners, on the 13th of September, 1860, adjudged the quantity of said land necessary for the use of the said railroad to be thirteen acres and seven roods, and assessed the value thereof at $1,000. (3.) From this assessment the Charleston and Savannah Railroad Company appealed, but the appeal was never prosecuted. (4.) The Charleston and Savannah Railroad Company becoming insolvent, their road was sold in 1866, and purchased by certain parties, who formed a new company and obtained a new charter under the name of the "Savannah and Charleston Railroad," and entered into possession of the said road, and have continued in the use thereof unto this time. (5.) The plaintiff has never executed any conveyance or other instrument of writing transferring or releasing his interest in the land set apart by the commissioners for the use of the Charleston and Savannah Railroad Company, and has never been paid in whole or in part therefor, and is, therefore, entitled to claim the possession of the said premises and damages for withholding the same, or for the payment of the sum of $1,000, assessed as aforesaid, with interest thereon. (6.) Plaintiff applied to the Savannah and Charleston Railroad Company for a settlement of his claim, but has been unable to obtain any satisfaction from them. Wherefore plaintiff asked that the Savannah and Charleston Railroad Company may be adjudged to deliver possession of said premises, and to pay damages for withholding the same, or to pay the plaintiff the assessment of $1,000, with interest from the 13th September, 1860. (7.) That the said company be enjoined from making use of the said land until such payment shall be made, and for such further relief as may be consistent with law and equity.

The answer of defendant says: (1.) That as to the allegations in the first, second and third paragraphs of the complaint they have no knowledge whatever, neither admitting nor denying them to be true. They were not in existence as a corporation at the time the alleged facts are said to have occurred. (2.) It is true the property of the Charleston and Savannah Railroad Company, including the road, right of way, equipments, buildings and furniture, was sold on the 20th November, 1866, at public auction, under foreclosure of mortgage, and was afterwards, by an order of the Court of Equity made by Chancellor Carroll, 26th January, 1867, conveyed to them; whereupon they entered into possession and have continued to use and occupy the same. (3.) No notice of claim of

any sort upon the property sold was given to plaintiff or any other person at the time of the said sale, which had been long advertised in the public prints. Defendants cannot be presumed to know, and do not know, what arrangement, understanding or bargain existed between the plaintiff and the Charleston and Savannah Railroad Company, by which the said company obtained exclusive possession and enjoyment of the premises and continued to be the debtors of the plaintiff for so many years, as appears from his complaint. Some arrangements, then, must have been made, and the failure and neglect of the plaintiff to get his money from the said company, during all that time, can give him no claim against defendants, who purchased the property and not the debts of the said company. (4.) That it may or may not be true that no title deed for the said premises was ever made by the plaintiff to the Charleston and Savannah Railroad Company, and that no part of the said assessed valuation has been paid, but defendants are advised that no written instrument was necessary to pass the title; and that if it were otherwise, the uninterrupted adverse possession of the said company of this defendant for more than ten years would be sufficient to cover any such defect. And defendant avers that the said company, and this defendant afterwards, have together been in adverse possession of the premises for more than ten years, and the claim of the plaintiff for the possession thereof, if he ever had any, which is denied, is absolutely barred by the Statute of Limitations. (5.) Defendant further says that the plaintiff is not entitled to claim payment of this defendant of the sum of $1,000, alleged by him to be due from the Charleston and Savannah Railroad Company. Defendant is not and cannot be made liable for the contracts or debts of another corporation or individual without voluntarily assuming them. Plaintiff alleges that the debt was contracted by the Charleston and Savannah Railroad Company, and defendant has never in any way undertaken to assume or pay it or admitted any liability for it. (6.) Wherefore defendant submits that the plaintiff is not entitled to the relief prayed for.

In the case of *T. H. Gregorie* · vs. *The Savannah and Charleston Railroad Company*, second above entitled, the complaint, the answer and the evidence are the same in every respect as in the case of W. D. Gillison, with the exception that in the case of Gregorie the land set apart was ten acres and two roods, and the assessment therefor was $325.

1. Plaintiffs, each sworn and examined in his own behalf, proved the facts stated in their case, except that Gillison thinks that the amount of his award was $1,400; and they each further testify that the causes why they delayed prosecuting their claim was the war and general embarrassment of the country at large.

2. Dr. Paul Pritchard, sworn for the plaintiffs, says: He was the agent of the Charleston and Savannah Railroad Company on or about 20th August, 1860, to procure the right of way from parties owning land on the line of the road. That he met commissioners duly appointed to assess the right of way through the lands of Dr. Gillison and Dr. Thomas H. Gregorie, and that in the case of Dr. William D. Gillison the amount was $1,000, and the quantity of land taken thirteen acres and seven roods; and that in the case of Dr. Thomas H. Gregorie the award was $325, and the quantity of land taken was ten acres and two roods. That the Charleston and Savannah Railroad appealed in both cases. That he was appointed by the President and Directors of the Charleston and Savannah Railroad to act as their right of way agent, and he made a record of his transactions at that time, and that from *that* record he has answered the interrogatories propounded to him in these cases. Witness further states that he did protest, as the agent of the company, against the award in both these cases, and submitted a proposition which the plaintiff, Dr. William D. Gillison, was willing to agree to in place of the above award, which was to take $2,300 in stock. The proposition was never acted upon.

The plaintiffs appealed, and filed the following notice and grounds of appeal:

His Honor, Judge Farmer, having dismissed the plaintiffs' complaints in the cases, without reducing his reasons to writing, as required by Section 291 of the Code, the plaintiffs are unable to know, or to state, on what grounds they have been turned out of Court.

In the absence, therefore, of a written decision, the plaintiffs must assume that His Honor dismissed their complaints upon *all* the grounds taken in answers of the defendants, and plaintiffs therefore submit as their grounds of appeal:

I. That the defendants offered no testimony whatever, either oral or written, to sustain any of the allegations contained in the several paragraphs of the answer; and the plaintiffs made no admissions thereof in any way.

II. Because, supposing the facts to be as alleged by the defendants, the conclusions of law drawn by His Honor are erroneous in this:

1. The Statute of Limitations cannot be set up by a defendant when he enters under a contract to purchase.

2. That the possession of two parties claiming by hostile title cannot be tacked.

3. That the actions in the present cases were commenced within ten years from the time of the award of the commissioners.

4. That the Statute of Limitations was suspended by the stay laws.

5. That the Charleston and Savannah Railroad Company never acquired a title to the land of the plaintiffs, and could not, therefore, convey a title to the Savannah and Charleston Railroad Company, who only acquired by their purchase the right *to use and occupy* the way, *subject* to the conditions prescribed by the charters of both companies, which expressly provides that no title shall pass until the assessment be paid or tendered.

III. As to the defense of purchase for valuable consideration without notice:

The plea cannot avail the defendants, because they have neither averred nor proved that they paid any consideration for the property in question, but merely assert that "the property of the Charleston and Savannah Railroad Company was sold on the 20th November, 1866, at public auction under foreclosure of mortgage, and was afterwards, by order of the Court of Equity, made by Chancellor Carroll, 26th January, 1867, conveyed to them, whereupon they entered into possession and have continued to use and occupy the same."

*Colcock & Son*, with whom were *Pope & Haskell*, for appellants:

The Charleston and Savannah Railroad had no right to mortgage the land of the plaintiffs, for that company never acquired a title thereto. The charter of that company expressly provides that " the lands and rights of way so valued by the commissioners shall vest in the said company in fee simple so soon as the valuation thereof may be paid, or tendered and refused." This was never done, but on the contrary, the company appealed from the assessments and

never prosecuted their appeal.—See testimony of Dr. Pritchard in brief; 13 Stat., § 10, 275.

The Statute of Limitations is not a bar to plaintiffs' recovery, because:

1. That the statute had not run out before suit brought. The assessment was made 13th of September, 1862, and the suit was commenced 12th of September, 1872, which is one day less than ten years, even granting that the possession of the two companies could be considered as *one adverse* and *hostile* possession. But defendants cannot claim this period of time, for they did not enter until 1867; and they cannot tack their possession to that of the Charleston and Savannah Railroad Company, for that company entered under a contract to purchase, and never held adverse or hostile possession to plaintiffs, and, as their entry was lawful and peaceable, plaintiffs could not have sued them.

2. Because the Statute of Limitations was suspended by the Stay Laws.

A defendant who has been in possession of lands for a less time than the statutory period cannot unite his possession with that of a previous tenant from whom he purchased, in order to make out the time required by the statute to bar the plaintiffs' right of recovery; fur until that period has run out they are both to be regarded, as it respects the true owner, as mere trespassers. A conveyance from the first to the second tenant, under such circumstances, conveys nothing.—*King* vs. *Smith*, Rice, 10; *Beadle* vs. *Hunter*, 3 Strob., 336; *Alexander* vs. *Burnet*, 5 Rich., 200; *Dillard* vs. *Philson*, 5 Strob., 215; *Mazyck* vs. *Wight*, 2 Brev., 151; *Turnipseed* vs. *Busby*, 1 McC., 279; *Sumner* vs. *Murphy*, 2 Hill, 494.

When a person goes into possession of land under an agreement to purchase it, he cannot hold adversely to the claim of the person under whom he went into possession so as to acquire a title by the Statute of Limitations.—*Richardson* vs. *Broughton*, 2 N. & McC., 417; *Jackson* vs. *Bard*, 4 John., 330; *Harrington* vs. *Wilkins*, 2 McC., 289; *Bank* vs. *Smyers*, 2 Strob., 28; *Watson* vs. *McBurney*, MSS. dec., 2 Rice Dig., 100; *Willison* vs. *Watkins*, Carolina Law Journal, 121.

The charter of the Savannah and Charleston Railroad Company (the present defendants) expressly provides that "nothing herein contained shall be held to discharge or impair any existing lien upon any property now in possession of the Charleston and Savan-

nah Railroad Company."—13 Stat., § 8, proviso, 443; see also § 6, 441.

Statute of Limitations not a bar when the taking is by eminent domain.—*Hannum* vs. *Borough, trustee of Chester,* 63 Penn. St., 475, referred to in July number, 1871, Law Review.

The plea of purchase for valuable consideration without notice cannot avail the defendant, because they have neither averred nor proved that they paid any consideration for the property in question, but merely assert that "the property of the Charleston and Savannah Railroad was sold on the 20th November, 1866, at public auction, under foreclosure of mortgage, and was afterwards, by order of the Court of Equity, made by Chancellor Carroll, January 26, 1867, conveyed to them, whereupon they entered into possession and continued to use and occupy the same."—*Zorn, trustee,* vs *Savannah and Charleston Railroad,* decided at November Term, 1873, by Supreme Court, and not yet reported. Willard, J.

It would be unjust and contrary to the first principles of government, and equally contrary to the intention of the statute, to take from the proprietor of the land his undoubted right, until compensation has been paid, or provision made for securing the same.—*Gardner* vs. *Newburgh,* 2 John. Ch., 162.

*Campbell,* contra :

1. The respondents are not liable for the debts of the Savannah and Charleston Railroad Company, and there is no proof that they ever assumed the payment of the debt of the latter company, alleged by the complaint.

2. These suits were brought on the 12th of September, 1870, and the respondents entered into possession not later than in February, 1867, and have continued in possession ever since, a period of more than five years before suit brought, and this is conclusive of their right to the land claimed.—Statutes, vol. 12, § 11, 276, 1853; vol. 13, § 9, 443, 1866; vol. 12, 543.

3. If the respondents have not already complete right to the use of the lands in question, and the appellants are the owners, still the respondents are by law entitled to hold and use the same, and specific mode and remedy is provided by law for the relief of appellants, and that mode and remedy is not the one adopted in this case.—Statutes, Vol. 13, § 8, 442.

April 19, 1876.   The opinion of the Court was delivered by

WILLARD, A. J.   The Charleston and Savannah Railroad Company was authorized by law to acquire lands and rights of way for the purposes of their road by statutory proceedings for the valuation of such lands by commissioners.   The statute declares "the lands and rights of way so valued by the commissioners shall vest in the said company in fee simple as soon as the valuation thereof may be paid or tendered and refused."

The plaintiffs, Gillison and Gregorie, were owners of separate parcels of land required for the use of said road, and proceedings were taken against them, respectively, for the purpose of fixing a valuation upon their respective lands.   Commissioners were appointed and a valuation fixed.   From this action appeals were taken, but never prosecuted.   We must assume these appeals to have been abandoned.   The railroad company took possession of the lands, but have never paid the amount at which they were valued.

Subsequently, the Savannah and Charleston Railroad Company, a corporation created by law, and distinct from the Charleston and Savannah Company, became the purchasers of the property of the last named company, and as part thereof took possession of the lands of the plaintiffs in the respective suits above entitled.   The plaintiffs in each case now claim that the Savannah and Charleston Railroad Company are bound either to complete the contract of purchase created by operation of law or to restore the land.

The only claim to the land possessed by the Charleston and Savannah Company was that of purchasers under a contract for the sale of the land.   This contract arose by operation of law, but its incidents are the same, as affecting the parties, as if it resulted from the voluntary act and consent of the parties themselves.   The defendants becoming the purchasers of the property of the former company acquired the rights of that company, under the contract of purchase, and could enforce it on complying with its terms.

On the other hand, the respective plaintiffs, on parting with possession of the land, were clothed with an equity to compel performance of the contract, and the land was subject to being treated in equity as if mortgaged to the plaintiffs as a security for so much money as they ought to receive in compensation for the value of

the land.—*Gregorie* vs. *Bulow*, Rich. Eq., 235; *Richards* vs. *McKee*, Harper Eq., 184; *Champion* vs. *Brown*, 4 John.; 398.

The defendants cannot be regarded as purchasers of the legal title for a valuable consideration and without notice of an equity affecting it. On the contrary, that which constitutes their title is the equitable right of the company to which they succeeded, and they are chargeable with notice of the nature of the possession of the party from whom they purchased.—*Daniels* vs. *Davison*, 16 Ver., 249.

It is evident that the defendant cannot maintain a claim to hold by adverse possession by lapse of time, for their possession was consistent with plaintiff's claim to enforce their contracts.—*Richards* vs. *McKee*, Harper Eq., 184; *Bank* vs. *Smyers*, 2 Strob., 28.

Nor can they maintain their plea of the Statute of Limitations, inasmuch as the contract is executory on both sides.—*Gregorie* vs. *Bulow*, Rich. Eq., 235. The fact that it was not necessary, in order to complete the title of defendants, that the vendor should perform any act, but that by the operation of the statute title would pass at once on payment or tender of the money, does not interfere with the idea that the contract is executory on both sides, for the statute in transferring the title merely does in his behalf what the vendor ought to do. The operation of the statute stands in lieu of a direct conveyance by the vendor, and gives to the relations of the parties, as it regards the Statute of Limitations, the same character as if, by the terms of the contract, the vendor was required to make a conveyance upon payment of the purchase money.

The judgment dismissing the complaint must be set aside and the causes remanded for decrees establishing in the respective cases liens in favor of the plaintiffs on the lands in question, and directing the sale of those lands in satisfaction of such liens, unless payment is made by the defendants of the amounts fixed as the value of said lands by the commissioners, with interest.

*Moses, C. J.,* and *Wright, A. J.,* concurred.